DJW/byk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

HARTFORD FIRE INSURANCE
COMPANY,

        Plaintiff,

                                     CIVIL ACTION

v.

                               Case No.  05-2001-DJW

P & H CATTLE COMPANY, INC.,
et al.,

        Defendants.

## MEMORANDUM AND ORDER

Plaintiff Hartford Fire Insurance Company ("Hartford") brings this contractual indemnity action to recover under a General Indemnity Agreement sums it, as surety, expended in defending and settling a bond claim.  The bond was issued on behalf of P & H Cattle Company ("P & H Cattle") and listed Tim Reece d/b/a Reece Cattle Company as a clearee.  Hartford asserts a claim for common law implied indemnity against Defendant Tim Reece d/b/a Reece Cattle Company.

This matter is presently before the Court on Defendant Reece's Motion for Summary Judgment (doc. 52).  Reece contends that he is entitled to summary judgment on Hartford's claim for common law indemnity because Kansas law only allows common law indemnity claims for tortious conduct.  He further contends that the uncontroverted material facts establish that Hartford was not compelled to pay any settlement amount on his behalf and that Hartford's claim is premised on his contractual liability as endorser of a negotiable instrument in the prior lawsuit. The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  For the reasons set forth below, the

motion is granted.

## I.      Relevant Facts

The following facts are either uncontroverted or based on evidence submitted in summary judgment papers and viewed in a light most favorable to the nonmovant. Immaterial facts and facts not properly supported by the record are omitted.

Defendant P & H Cattle was a livestock agency required to be bonded under the Packers and Stockyards Act of 1921.[1]  Plaintiff Hartford issued P & H Cattle a Bond Required of Livestock Market Agencies, Dealers and Packers under the Packers and Stockyards Act of 1921, as Amended with an effective date of June 12, 1991 (hereinafter the "Bond").  The Bond listed P & H Cattle as principal and Hartford as surety.

On April 3, 1993, P & H Cattle, Emporia Livestock Sales, Inc., Olma V. Peak, and Velma Peak signed Hartford's General Indemnity Agreement, which stated it was "dated and effective" on June 12, 1992.

On January 23, 1995, P & H Cattle and Hartford executed a "Rider for General Use with Bond Required Under Packers and Stockyards Act, 1921, as Amended," which amended the Bond by adding Tim Reece d/b/a Reece Cattle Company as a "clearee" under clearing clause three of the Bond.

On February 14, 2001, Aaron Wilkey d/b/a A & W Cattle Company ("Wilkey") sold 225 head of fat cattle for $186,780, which were shipped from the Hy-plains Feedyard to Iowa Beef Processors in Emporia, Kansas for slaughter.  The cattle were ultimately purchased by Holmes Livestock, who issued

_____

[1]7 U.S.C. § 204.

a check in the amount of $186,780 payable to "Tim Reece." Upon receiving the check from Holmes Livestock, Tim Reece's wife endorsed the check and sent it to Wilkey's bank. The check was dishonored for payment due to insufficient funds.

On August 13, 2002, Wilkey filed his complaint against The Hartford Fire Insurance Company, P & H Cattle, and Tim Reece in the United States District Court for the District of Kansas, captioned *Aaron Wilkey d/b/a A & W Cattle Company vs. P & H Cattle Company, Inc. et al.*, case number 02-2376-DJW (hereinafter the "Wilkey Action"). Wilkey sought the unpaid purchase price of the cattle under the Bond from P & H Cattle, as principal, and from Hartford, as surety. Wilkey further sought to recover the amount of the dishonored check from Tim Reece as an endorser of a negotiable instrument.

Hartford entered into a settlement with Wilkey in the Wilkey Action and it paid the sum of $75,000 to Wilkey. Said sum was paid on or about June 30, 2004. On August 5, 2004, Reece paid Wilkey the equivalent of $10,889 to settle Wilkey's claim against him.

Hartford commenced the instant action against P & H Cattle; Emporia Livestock Sales, Inc.; Olma V. Peak; Velma M. Peak; (collectively the "Peak Indemnity Defendants"); Tim Reece d/b/a Reece Cattle Company; the Olma V. Peak and Velma M. Peak Irrevocable Trust (the "Peak Trust"); and the Peak Trust's co-trustees, Amby Scott Peak; Virginia L. Morris; and Chrysanne M. Haselhorst. Hartford claims that, as a named defendant in the Wilkey Action, it was compelled to defend itself in the Wilkey Action and incur legal fees and expenses in doing so. In Count I of its Complaint, Hartford asserts a claim for contractual indemnity under the General Indemnity Agreement against the Peak Indemnity Defendants. In Count II, it asserts a claim for common law implied indemnity against Tim Reece d/b/a Reece Cattle Company. In Counts III and IV, it seeks to set aside fraudulent conveyances under common law and

K.S.A. 33-201 *et seq.* against Olma V. Peak, Velma M. Peak, the Peak Trust; and the Peak Trust's co-trustees (collectively the "Peak Trust Defendants"). In their Answer, the Peak Indemnity Defendants and Peak Trust Defendants assert a counterclaim against Hartford for negligence, and a cross claim for implied indemnity against Defendant Tim Reece d/b/a Reece Cattle Company.

## II.    Standard for Summary Judgment

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue regarding any material fact and that the moving party is entitled to judgment as a matter of law.[2]  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[3]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[4]  An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[5]

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[6]  In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the

---

[2]Fed. R. Civ. P. 56(c).

[3]*Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002).

[4]*Wright ex rel. Trust Co. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[5]*Adler*, 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[6]*Spaulding*, 279 F.3d at 904 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[7]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[8]   The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[9]   Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[10]   To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein.[11]

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'"[12]

## III.   Discussion and Analysis

### A.   Hartford's Common Law Implied Indemnity Claim Against Reece

---

[7] *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671).

[8] *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324.

[9] *Anderson*, 477 U.S. at 256; *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[10] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000).

[11] *Id.*

[12] *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

Defendant Reece requests that the Court enter summary judgment against Plaintiff on its claim for common law indemnity because the uncontroverted material facts establish that Hartford was not compelled to pay any settlement amount on his behalf and the prior lawsuit against him was based on the contract cause of action for endorser's liability.   Defendant Reece also contends that Kansas law provides that common law indemnity claims are only based on tort claims and not contract claims.

Hartford opposes the motion, arguing that Reece's motion ignores the relationship implied in law between Hartford in its capacity as a surety on the Bond and Reece as a clearee under the Bond.  It further asserts that none of the cases cited by Reece state explicitly, as part of the law of the case, that the only situation to which common law implied indemnity can be relied on as a remedy is in a tort action.

Under Kansas law, claims of indemnity are allowed when a contract of indemnity is implied.[13]  "The claim usually arises when one party without fault is compelled to pay for the tortious acts of another."[14]  The indemnitee has a right of action against the indemnitor.[15]  Indemnity transfers "the entire loss imposed upon one tortfeasor to another who, in justice and equity, should bear it."[16]  Under Kansas law, indemnity is allowed "only where public policy and justice dictate that the responsibility should be shifted."[17]

---

[13]*Bick v. Peat Marwick & Main*, 14 Kan. App. 2d 699, 708, 799 P.2d 94, 102 (1990); *St. Paul Fire & Marine Ins. Co. v. Tyler*, 26 Kan. App. 2d 9, 14, 974 P.2d 611 (1999).

[14]*Bick*, 14 Kan. App. 2d at 708, 799 P.2d at 102;  *St. Paul Fire*, 26 Kan. App. 2d at 14-15, 974 P.2d at 616.

[15]*Id.*

[16]*Symons v. Mueller Co.*, 526 F.2d 13, 16 (10th Cir. 1975).

[17]*Id*. at 17.

6

In *Haysville U.S.D. No. 261 v. GAF Corp.*,[18] the Kansas Supreme Court identified two traditional situations in which claims of indemnity are allowed:

> The first occurs where there is an expressed contract of indemnity, such as a "hold harmless" agreement.  The second occurs where a contract of indemnity may be implied when one is compelled to pay what another party ought to pay.  The implied or constructive liability usually arises when one personally, without fault, is made to pay for a tortious act of another.  The person paying has a right of action against the person at fault.[19]

Cases in the District of Kansas have construed Kansas law as limiting implied indemnity claims to tort actions.[20]  In *Nature's Share, Inc. v. Kutter Products, Inc.*,[21] Judge Crow entered summary judgment on the defendant's indemnity claim based on its failure to show how its agency theory sustained a basis for indemnity on the contract claim or that Kansas law permitted it to bring an implied indemnity action for its liability on a contract breach.  The court noted that "Kansas law appears to limit implied indemnity to tort actions."[22]

In *Edward Kreamer & Sons, Inc. v. City of Kansas City, Kan*sas,[23] Judge Van Bebber dismissed plaintiff's implied indemnity cause of action based on its finding that plaintiff could not state a

---

[18]233 Kan. 635, 642, 666 P.2d 192, 199 (1983).

[19]*Id.* at 642, 666 P.2d at 199.  Kansas courts do not appear to make a distinction between indemnity implied in fact and indemnity implied in law.  For purposes of ruling on this motion, the Court construes Hartford's claim as one seeking indemnity implied in law.

[20]*Nature's Share, Inc. v. Kutter Prods., Inc.*, 752 F. Supp. 371, 387 (D. Kan.1990); *Edward Kraemer & Sons, Inc. v. City of Kansas City, Kan.*, 874 F. Supp. 332, 336 (D. Kan. 1995); *Culbertson v. United States*, 960 F. Supp. 1497, 1507 (D. Kan. 1997).

[21]752 F. Supp. 371, 387 (D. Kan.1990).

[22]*Id.* (citing *Haysville*, 233 Kan. at 642, 666 P.2d at 199).

[23]874 F. Supp. 332, 335-36 (D. Kan.1995).

7

claim for implied indemnity under Kansas law.  In that case, the Kansas Department of Transportation ("KDOT") alleged that a contract for indemnification should be implied because it had to pay the delay claim of the bridge construction contractor.  KDOT alleged that the highway construction contractor was exclusively responsible for the causes of the bridge construction contractor's delay claim.  KDOT sought recovery from the highway construction contractor under a theory of implied indemnity based on the contractor's negligence and failure to timely complete the project with a reasonable degree of skill, quality, and workmanship in conformity with the contract.   The plaintiff argued that the Kansas Supreme Court's decision in *Haysville, supra,* held that implied indemnity claims do not apply to economic damages for breach of contract.  The court agreed with the plaintiff, concluding that "[t]he [*Haysville*] opinion indicates that the theory of implied indemnity is best restricted to tort actions,"[24] and "Kansas law appears to limit implied indemnity to tort actions."[25]   The court found that in the context of the action, KDOT could not state a claim for implied indemnity under Kansas law.

Similarly, in *Culbertson v. United States,*[26] Judge Van Bebber entered summary judgment in favor of the FDIC-receiver on plaintiff's claim for implied indemnification.  The court found that plaintiff "fail[ed] to satisfy a basic tenet of implied indemnity under Kansas law; that he is being required to pay for the tortious act of the FDIC-receiver."[27]  Due to the lack of a tortious act by the FDIC-receiver, the court held

---

[24]*Id.*

[25]*Id.* (citing *Nature's Share*, 752 F. Supp. at 387; *Facilities Dev. Corp. v. Miletta*, 180 A.D.2d 97, 584 N.Y.S.2d 491, 495-96 (1992)).

[26]960 F. Supp. 1497, 1507 (D. Kan. 1997)

[27]*Id.* (citing *Haysville*, 233 Kan. at 642, 666 P.2d at 199).

that plaintiff had not set forth a claim for implied indemnification and the FDIC-receiver was entitled to summary judgment on the issue.

Consistent with these cases, the Court holds that for Hartford to recover on its implied indemnity claim against Defendant Reece, it must prove (1) that it was compelled to pay an obligation that Defendant Reece ought to have paid but did not pay, (2) it was without fault, and (3) the obligation arose from the tortious actions of Defendant Reece.  In this case, Hartford has failed to establish that the obligation it was compelled to pay arose from the tortious actions of Defendant Reece.  Hartford does not allege any tortious action by Defendant Reece, which triggered coverage under the Bond.  Instead, Hartford argues that it was only because of the activities of Defendant Reece in endorsing Holmes Livestock's check, which was later dishonored, that the Wilkey claim arose and that Hartford finds itself in this position.

The Court holds that Defendant Reece's action of endorsing Holmes Livestock's check, which was incorrectly made payable to him, and sending it to Wilkey's bank does not constitute a tortious act. Wilkey's claim against Defendant Reece in the Wilkey Action was for endorser's liability, a contractual cause of action.  As Hartford has failed to establish that the obligation it was compelled to pay arose from the tortious actions of Defendant Reece, its claim for implied indemnity against Reece must  fail.

### B.      The Peak Indemnity Defendants' Common Law Implied Indemnity Cross Claim Against Tim Reece d/b/a Reece Cattle Company

In their Answer, the Peak Indemnity Defendants and Peak Trust Defendants assert a cross claim for implied indemnity against Defendant Tim Reece d/b/a Reece Cattle Company in the event they are found liable to Hartford..  If they are found to be liable to Hartford, they claim that Tim Reece d/b/a Reece Cattle Company should be found liable to them to pay any and all amounts due to Hartford.  They argue

that it would be an undeserved windfall for Tim Reece d/b/a Reece Cattle Company to accept this benefit without payment therefor and injustice to the Peak Indemnity Defendants if they are found liable to Hartford.

Although Defendant Reece did not move for summary judgment against the Peak Indemnity Defendants on their cross claim for implied indemnity in his motion, the Court will address this cross claim in light of the Court's holding herein that a necessary element for a party to recover on an implied indemnity claim is that the obligation arose from the tortious actions of the party from whom implied indemnification is sought.  Like Hartford, the Peak Indemnity Defendants do not allege any tortious action by Defendant Reece that triggered coverage under the Bond.  However, as the parties have not been provided an opportunity to brief or argue this issue, the Court will permit the Peak Indemnity Defendants to file a pleading, on or before **August 11, 2006**, addressing why summary judgment should not be granted in favor of Defendant Tim Reece d/b/a Reece Cattle Company on their cross-claim for implied indemnity based upon the Court's holding herein that a tortious action by Defendant Reece is required in order to recover on a claim for implied indemnity.  Any response by Defendant Reece shall be filed by **August 25, 2006**.

**IT IS THEREFORE ORDERED** that Defendant Reece's Motion for Summary Judgment (doc. 52) on Hartford's claim for common law indemnity (Count II) is granted.

**IT IS FURTHER ORDERED** that the Peak Indemnity Defendants may file a pleading, on or before **August 11, 2006**, addressing why summary judgment should not be granted in favor of Defendant Tim Reece d/b/a Reece Cattle Company on their cross-claim for implied indemnity based upon the Court's holding herein that a tortious action by Defendant Reece is required in order to recover on a claim for implied indemnity.  Any response by Defendant Reece shall be filed by **August 25, 2006**.

10

**IT IS SO ORDERED**.

Dated this 28th day of July, 2006, in Kansas City, Kansas.


s/ David J. Waxse
David J. Waxse
U. S. MAGISTRATE JUDGE

cc: All counsel