DJW/byk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

HARTFORD FIRE INSURANCE
COMPANY,

        Plaintiff,

                                          CIVIL ACTION

v.

                                    Case No.  05-2001-DJW

P & H CATTLE COMPANY, INC.,
et al.,

        Defendants.

## MEMORANDUM AND ORDER

Plaintiff Hartford Fire Insurance Company ("Hartford") brings this contractual indemnity action to recover sums that it, as surety, expended in defending and settling a bond claim.  Hartford issued the bond on behalf of Defendant P & H Cattle Company, Inc. ("P & H Cattle") and the bond listed Defendant Tim Reece d/b/a Reece Cattle Company as "clearee."  Subsequent to the issuance of the bond, P & H Cattle, Emporia Livestock Sales, Inc., Olma V. Peak, and Velma Peak (collectively the "Peak Indemnity Defendants") executed a General Indemnity Agreement with Hartford.  This matter is before the Court on  Hartford's Rule 54.2 Statement of Consultation and Memorandum in Support of Attorneys' Fees.

## I.      Procedural Background

Hartford commenced the instant action against the Peak Indemnity Defendants; Tim Reece d/b/a Reece Cattle Company ("Reece"); the Olma V. Peak and Velma M. Peak Irrevocable Trust; and  the  Peak Trust's co-trustees: Amby Scott Peak; Virginia L. Morris; and Chrysanne M. Haselhorst.  In Count I of its Complaint, Hartford asserts a claim for contractual indemnity under

the General Indemnity Agreement against the Peak Indemnity Defendants.  In Count II, it asserts a claim for common law implied indemnity against Tim Reece d/b/a Reece Cattle Company.  In Counts III and IV, it seeks to set aside fraudulent conveyances under common law and K.S.A. 33-201 *et seq.* against Olma V. Peak, Velma M. Peak, the Olma V. Peak and Velma M. Peak Irrevocable Trust; and the Peak Trust co-trustees (collectively the "Peak Trust Defendants").  In their Answer, the Peak Indemnity Defendants and Peak Trust Defendants asserted a counterclaim against Hartford for negligence, and a cross claim for implied indemnity against Defendant Tim Reece d/b/a Reece Cattle Company.

On July 28, 2006, the Court entered summary judgment in favor of Defendant Reece on Hartford's claim for common law implied indemnity (doc. 75) and entered summary judgment in favor of Hartford on its contractual indemnity claim against the Peak Indemnity Defendants (doc. 74).  The Court also dismissed the counterclaim asserted against Hartford.  The Court further granted the Peak Indemnity Defendants an opportunity to show why summary judgment should not be granted in favor of Defendant Tim Reece d/b/a Reece Cattle Company on their cross-claim for implied indemnity.

In its July 28, 2006 Memorandum and Order entering summary judgment in favor of Hartford on its contractual indemnity claim, the Court held that under the provisions of the General Indemnity Agreement, entered between Hartford and the Peak Indemnity Defendants, Hartford is entitled to recover its court costs, interest, and attorney fees incurred in defending and settling the Wilkey Claim and Action[1] and in enforcing the provisions of the General Indemnity Agreement

---

[1]The Wilkey Claim and Action refer to the underlying action, captioned *Aaron Wilkey d/b/a A & W Cattle Company vs. P & H Cattle Company, Inc. et al.*, D. Kan. Civ. A. No. 02-2376-DJW, wherein Aaron Wilkey made a claim under the bond to recover the unpaid

against the Peak Indemnity Defendants.

On August 14, 2006, the Court conducted a telephone status conference.  During that conference the Court stayed any further action on Counts III and IV of Hartford's complaint for debt and to set aside fraudulent conveyances against the Peak Trust Defendants until such time as the Court enters a final judgment with respect to Count I of Plaintiff's Complaint.  The Court further entered summary judgment in favor of Defendant Reece on the cross-claim for implied indemnity asserted by the Peak Indemnity Defendants and Peak Trust Defendants.  Finally, on the issue of attorneys' fees to be awarded, the Court directed Hartford either file the parties' stipulation as to the amount of attorney fees to be awarded or a statement of consultation, along with a supplemental statement itemizing the attorney fees expended in defending the indemnification claim, negotiating the claim, settling the claim, and enforcing the provisions of the General Indemnity Agreement.  The Peak Indemnity Defendants were to file a response ten days thereafter.

As directed by the Court, Hartford filed its Rule 54.2 Statement of Consultation and Memorandum in Support of Attorneys' Fees (doc. 80) on September 13, 2006.  The Peak Indemnity Defendants filed their Objection to Hartford's Statement of Consultation (doc. 83) on October 18, 2006.  After being granted leave to file it, Hartford filed its Reply (doc. 87) on November 1, 2006.

## II.    Hartford's Claim

Hartford requests that the Court enter judgment in the total amount of $186,405.43, itemized as follows:

- •    $36,383.98 in attorneys' fees and expenses incurred in defending the Wilkey claim

---

purchase price of cattle from Hartford and P & H Cattle under the bond.  Wilkey also asserted a separate claim against Tim Reece as an endorser of a negotiable instrument.

- • $75,000.00 amount paid by Hartford to settle the Wilkey Claim and Action

- • $61,980.37 in attorneys' fees and expenses incurred in enforcing the General Indemnity Agreement

- • $13,041.08 in interest from June 22, 2004 at the rate of 5.25% on the principal amount of $111,383.98 (the $75,000 settlement amount plus $36,383.98 in attorneys' fees and expenses incurred in defending the Wilkey claim).

During the parties' consultation efforts regarding attorneys' fees, the Peak Indemnity Defendants objected to Hartford's inclusion of attorneys' fees attributable to Hartford's implied indemnity claim against Tim Reece, and fees attributable to Hartford's claims to set aside fraudulent conveyances (Counts III and IV). Hartford agreed and reduced its initial attorneys' fee amount by $14,860.30 for attorneys' fees and expenses attributable to Tim Reece and by $14,702.10 for attorneys' fees and expenses attributable to Counts III and IV to set aside fraudulent conveyances. The Peak Indemnity Defendants continue to object to Hartford's allocation of its attorneys' fees for preparing the pretrial order. They argue that because Hartford failed to properly break out the time spent for each defendant in preparation of the pretrial order, it should not be permitted to recover any attorneys' fees spent working on the pretrial order. They alternatively argue that Hartford should reduce its attorneys' fees for preparation of the pretrial order by more than 10% for the Reece claim and by more than 20% for Counts III and IV.

The Peak Indemnity Defendants also appear to take issue with Hartford's failure to break out its attorneys' fees and expenses relating to Tim Reece incurred by Hartford in defending the Wilkey Claim and Action. In addition, they object to Hartford's inclusion of attorneys' fees for redacted entries on billing invoices, and to Hartford's claim for prejudgment interest. The Court will discuss

4

each objection below.

**III.    The Peak Indemnity Defendants' Objections**

      **A.    Attorneys' fees for the preparation of pretrial order**

            *1.    Fees attributable to Reece claim*

During the parties' initial consultation regarding attorneys' fees, the Peak Indemnity Defendants objected to Hartford's inclusion of fees and expenses incurred in connection with Hartford's pursuit of the claim against Defendant Tim Reece because Hartford did not prevail on that claim.  Hartford agrees that it is not entitled to recover these fees and expenses, and has separately identified and itemized its attorneys' time, except for the pretrial order process, attributable to the implied indemnity claim it asserted against Defendant Reece in this action.  This itemization is set forth in Hartford's Attorneys' Fees and Expenses Attributable to Claim Against Tim Reece (doc. 78-5) and totals $14,860.30.  The itemization allocates 10% of attorneys' time preparing the pretrial order as attributable to the Reece claim.

The Peak Indemnity Defendants object to Hartford's 10% allocation of attorneys' fees to the Reece claim for preparation of the pretrial order.  They argue that because Hartford failed to properly break out the time spent for each defendant in preparation of the pretrial order, it should not be permitted to recover any of the $16,380 in attorneys' fees for work on the pretrial order.  They argue that Hartford offers no rational explanation why 10% is appropriate. The Peak Indemnity Defendants alternatively argue that if the Court believes that the Hartford is entitled to some attorneys' fees for the pretrial order, then it should only award Hartford one-half or one-third of the billed attorneys' fees for preparation of the pretrial order.  They argue that an equal apportionment is more reasonable because defendants in this case were represented by two sets of attorneys, the

Turners for the Peak Indemnity and Peak Trust Defendants and Wilburn Dillon for Defendant Reece, and therefore any attorneys' fees should be apportioned equally. The second alternative argued by the Peak Indemnity Defendants would be to allocate only one-third of Hartford's attorneys' fees for the pretrial order to the Peak Indemnity Defendants.  This one-third allocation would be based on the Court finding that the case involved three sets of claims: Count I for contractual indemnity against the Peak Indemnity Defendants, Count II for implied indemnity against Defendant Reece, and Counts III and IV against the Peak Trust Defendants.

The Court rejects the Peak Indemnity Defendants' argument that Hartford should be entitled to no attorneys' fees for work on the pretrial order.  It also rejects the alternative percentages proposed by the Peak Indemnity Defendants.  Hartford has provided a reasonable explanation for allocating only 10% of its attorneys' fees for preparing the pretrial order to the Reece claim. Hartford explains that there were times when all counsel were working on the pretrial order, consulting with each other and later exchanging drafts, and even later conferring with the Court. It maintains that allotting a 10% fee aspect for such joint endeavors for time expended on the Reece claim is reasonable because counsel for Defendant Reece submitted his input to the Pretrial Order only once, and his input was clear and concise.  It alleges that the Peak Defendants, by comparison: (a) kept adding new defenses; (b) raised defenses that were non meritorious but that nonetheless had to be addressed by Hartford, specifying the elements and other reasons why they were not applicable; and (c) submitted redrafts that were not processed on a word processing system where the changes could be redlined and reprocessed easily, but rather were retyped with numerous typos and rearranging of formatting, scrambling of the order of presentation, and occasional complete omissions.  Based on these reasons, the Court finds Hartford's allocation of 10% of its attorneys'

time in preparing the pretrial order to the claim of Defendant Reece to be reasonable. Defendants' request that the Court disallow the entire amount Hartford's attorneys' fees for preparation of the pretrial order, or alternatively reduce Hartford's claim for its attorneys' fees for preparation of the pretrial order by more than 10% to account for time attributable to the Reece claim, is therefore denied.

          2.     *Fees attributable to Counts III and IV*

The Peak Indemnity Defendants also object to Hartford's 20% allocation of its attorneys' fees for preparation of the pretrial order attributable to Counts III and IV. They essential make the same arguments and suggest the same alternative percentages asserted in support of their objection to Hartford's allocation of pretrial order preparation fees for Reece claim.

In its Reply, Hartford justifies its 20% reduction of its attorneys' fees for preparation of the pretrial order attributable to Counts III and IV by stating that the preparation and conferences between the Court and counsel did not significantly dwell on Counts III and IV. Very few changes to drafts of the pretrial order pertained to Counts III and IV. It asserts that the allocation is fair in light of the inordinate time spent on pretrial matters relating to Count I, the contractual indemnity claim against the Peak Indemnity Defendants.

The Court finds Hartford's allocation of 20% of its attorneys' time in preparing the pretrial order to Counts III and IV to be reasonable. Defendants' request that the Court disallow the entire amount Hartford's attorneys' fees for preparation of the pretrial order, or alternatively reduce Hartford's claim for its attorneys' fees for preparation of the pretrial order by more than 20% to account for time attributable to Counts III and IV, is therefore denied.

    **B.**    **Fees related to Reece in the *Wilkey* Action**

The Peak Indemnity Defendants also appear to take issue with Hartford's failure to break out its attorneys' fees and expenses relating to Tim Reece in the Wilkey Action. They, however, fail to provide any explanation why Hartford should exclude its attorneys' fees and expenses relating to Tim Reece in the Wilkey Action.  The Court sees no reason why Hartford should do so.  Unlike the present action wherein Hartford sought indemnification from the Peak Indemnity Defendants and Defendant Reece, Hartford and Tim Reece were co-defendants with separate counsel in the Wilkey Action.  Hartford did not assert any claim against Tim Reece in the Wilkey Action, nor did Tim Reece assert any claim against Hartford in that case.  Hartford need not exclude its attorneys' fees and expenses relating to Tim Reece in the Wilkey Action.

### C. Redactions of Portions of Hartford's Billing Invoices

In several of the billing invoices submitted by Hartford in support of its claim for its attorneys' fees, certain portions of the itemized description of the activity were redacted under claims that the information was attorney client privileged.  The Peak Indemnity Defendants request that the Court exclude the total amount of attorney fees for these redacted entries from the amount awarded to Hartford because the redactions do not permit them to adequately determine whether the attorney fees are proper or whether the attorneys' services were attributable to Tim Reece or other claims.

The Court has reviewed all the billing records submitted by Hartford in support of its claim for attorneys' fees and finds that the redaction of certain portions of the description of the services rendered by Hartford's counsel does not impede a determination of whether the activity was reasonably related to the instant litigation.  Most of the redacted entries appear to only redact the actual substance of the particular correspondence to Lana Glovach, Hartford's Bond Claim Manager

8

who handled the Wilkey bond claim.   Even with the redaction of the substance of the correspondence to Ms. Glovach, the Court is still able to sufficiently review the partially redacted entries and conclude that the entries reflect services that are appropriately included in Hartford's claim for attorneys' fees.  The Peak Indemnity Defendants' argument that the redacted information is necessary to determine whether the attorneys' services were attributable to Defendant Reece is not convincing because, for many of the redacted entries, Hartford has already excluded some or all of the attorneys' fee time as attributable to its claim against Defendant Reece.  Specifically, Hartford has excluded some or all of its attorneys' fees attributable to Defendant Reece for the following redacted entries:  October 8, 2004, July 31, 2005, December 16, 2005, December 18, 2005, January 24, 2006, January 26, 2006, February 20, 2006, February 23, 2006, March 9, 2006, March 14, 2006, April 12, 2006, April 13, 2006, May 15, 2006, and July 31, 2006.  Based on a review of the billing invoices, the Court is satisfied that Hartford has appropriately excluded attorneys' fees attributable to its claim against Defendant Reece from all the entries with redactions.  The Peak Indemnity Defendants' request that the Court exclude the total amount of attorney fees for the redacted entries from the amount awarded to Hartford is therefore denied.

>    **D.    Prejudgment Interest**

As part of the judgment, Hartford seeks to recover $13,041.08 in prejudgment interest.  This amount is calculated at the rate of 5.25% from the June 22, 2004 date of payment of the settlement monies on the principal amount of $111,383.98, which is comprised of the $75,000 settlement amount plus $36,383.98 in attorneys' fees and expenses incurred in defending the Wilkey claim. The Peak Indemnity Defendants contend that Hartford's request for prejudgment interest is not properly part of a Rule 54 motion and should be denied in its entirety.  They further argue that

Hartford's request for prejudgment interest was not awarded.

Hartford's current briefing and documentation in support of its fee request is not made pursuant to Fed. R. Civ. P. 54 or D. Kan. Rule 54, but is rather to aid the Court in determining the appropriate amount to enter as judgment in this case. The Peak Indemnity Defendants' objection that Hartford's request for prejudgment interest is not properly a part of a Rule 54 motion is overruled.

Contrary to the Peak Indemnity Defendants' assertion that Hartford's request for prejudgment interest was not awarded, the Court held in its July 28, 2006 Memorandum and Order that under the provisions of the General Indemnity Agreement, entered between Hartford and the Peak Indemnity Defendants, Hartford is entitled to recover its court costs, *interest* and attorney fees incurred in defending and settling the Wilkey Claim and Action and in enforcing the provisions of the General Indemnity Agreement against the Peak Indemnity Defendants (emphasis added). The Court's holding was based on the terms of the General Indemnity Agreement entered into by the Peak Indemnity Defendants on June 12, 1993. Section III of that document provides that the Peak Indemnity Defendants "will indemnify and hold [Hartford] harmless from all loss, liability, damages and expenses including, but not limited to, court costs, *interest*, and attorney's fees, which [Hartford] incurs or sustains (1) because of having furnished any Bond, or (2) because of the failure of an indemnitor to discharge any obligations under this Agreement, or (3) in enforcing any of the provisions of the Agreement." Thus, the Court finds that Hartford is entitled to recover  interest, including prejudgment interest, incurred in defending and settling the Wilkey Claim and Action. Having clarified that Hartford is entitled to recover prejudgment interest, the Court must determine the appropriate amount of prejudgment interest to include in the judgment.

10

Prejudgment interest in a diversity action is a substantive matter governed by state law.[2]  In

Kansas, prejudgment interest is governed by K.S.A. 16-201.[3]  That statute provides:

> Creditors shall be allowed to receive interest at the rate of ten percent per annum,
> when no other rate of interest is agreed upon, for any money after it becomes due;
> for money lent or money due on settlement of account, from the day of liquidating
> the account and ascertaining the balance; for money received for the use of another
> and retained without the owner's knowledge of the receipt; for money due and
> withheld by an unreasonable and vexatious delay of payment or settlement of
> accounts; for all other money due and to become due for the forbearance of payment
> whereof an express promise to pay interest has been made; and for money due from
> corporations and individuals to their daily or monthly employees, from and after the
> end of each month, unless paid within fifteen days thereafter.[4]

The allowance of prejudgment interest under Kansas law is a matter of judicial discretion.[5]

The general rule in Kansas is that prejudgment interest is allowed on liquidated claims.[6] A claim

becomes liquidated when both the amount due and the date on which it is due are fixed and certain,

or when the same becomes definitely ascertainable by mathematical computation.[7]  Where an

amount is due upon contract, either express or implied, and there is no uncertainty as to the amount

which is due or the date on which it becomes due, the creditor is entitled to recover interest from the

due date.[8]  In essence, prejudgment interest is allowed on "liquidated" claims and a claim becomes

---

[2]*Hofer v. Unum Life Ins. Co. of Am.*, 441 F.3d 872, 878 (10th Cir. 2006) (citing *Webco Indus., Inc. v. Thermatool Corp.*, 278 F.3d 1120, 1134 (10th Cir. 2002)).

[3]*Id.* (citing *Miller v. Botwin*, 258 Kan. 108, 119, 899 P.2d 1004, 1011 (1995)).

[4]K.S.A. 16-201.

[5]*Miller,* 258 Kan. at 119, 899 P.2d at 1011.

[6]*Id.*, 899 P.2d at 1012.

[7]*Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 883, 953 P.2d 1027, 1033 (1998);  *Kilner v. State Farm Mut. Auto. Ins. Co.*, 252 Kan. 675, 847 P.2d 1292, 1300 (1993).

[8]*See Neustrom v. Union Pac. R. Co.*, 156 F.3d 1057, 1067 (10th Cir. 1998).

11

liquidated "when both the amount due and the date on which it is due are fixed and certain, or when the same become definitely ascertainable by mathematical computation."[9]

Hartford seeks prejudgment interest on two of its claims:  the $75,000 settlement monies it paid to settle the Wilkey Claim and Action on behalf of the Peak Indemnity Defendants, and $36,383.98 in attorneys' fees and expenses incurred in defending the Wilkey Claim and Action.  The Court finds that Hartford is only entitled to prejudgment interest on the amount paid to settle the Wilkey Claim and Action because it is the only claim where the amount due and the date which it is due are fixed and certain, and thus considered liquidated.  Hartford is not entitled to prejudgment interest on its claim for attorneys' fees and expenses incurred defending the Wilkey Claim and Action because of the uncertainty as to the amount of attorneys' fees due and the date which they became due.  Thus, the Court finds that Hartford's claim for attorneys' fees and expenses incurred defending the Wilkey Claim and Action is not a liquidated claim for purposes of awarding prejudgment interest.

The next question is the date when prejudgement interest on the settlement amount should commence.  "When prejudgment interest should commence is a matter to be determined by the trial court in the exercise of its sound discretion, upon consideration of all the attendant facts and equities."[10]  Hartford asserts that prejudgment interest should accrue starting from June 22, 2004, the date it paid the settlement monies to Wilkey to settle Wilkey's claim under the bond on behalf

---

[9]*Hofer*, 441 F.3d at 880 (quoting *Green Constr. Co. v. Kansas Power & Light Co.*, 1 F.3d 1005, 1010 (10th Cir.1993) (quoting *Plains Res., Inc. v. Gable*, 235 Kan. 580, 682 P.2d 653, 657 (1984))).

[10]*Fidelity & Deposit Co. of Maryland v. Hartford Cas.  Ins. Co.*, 216 F. Supp. 2d 1240, 1243 (D. Kan. 2002) (quoting *Mitchelson v. Travelers Ins. Co.*, 229 Kan. 567, 629 P.2d 143, 148 (1981)).

of the Peak Indemnity Defendants.   The Court agrees with Hartford that June 22, 2004 is the date

when prejudgment interest should commence on Hartford's claim for the settlement proceeds.[11]

The final component of the prejudgment interest calculation is the interest rate.   Hartford

requests  prejudgment interest based upon an interest rate of 5.25% per annum.  The Peak Indemnity

Defendants do not raise any objection to this interest rate.   The Court will thus consider the 5.25%

interest rate as agreed upon by the parties and will calculate the prejudgment interest amount based

on this interest rate.  Based on the above discussion, the Court calculates prejudgement interest on

the $75,000 settlement amount at the interest rate of 5.25% with interest accruing from June 22,

2004, the date Hartford paid the settlement monies.  This calculates to $9,730.48[12] in prejudgement

interest.

## IV.    Rule 54(b) Certification

As discussed with the parties at the August 14, 2006 status conference, the Court next

addresses whether this matter is appropriate for entry of final judgment by certification under Fed.

R. Civ. P. 54(b).

Federal Rule of Civil Procedure 54(b) provides that when multiple claims or parties are

involved in an action, "the court may direct the entry of a final judgment as to one or more but fewer

than all of the claims or parties only upon an express determination that there is no just reason for

---

[11]*See Neustrom*, 156 F.3d at 1067 (settlement amount became liquidated for purposes of assessing prejudgment interest on the date the settlement became final);  *Missouri Pac. R. Co. v. Kansas Gas & Elec. Co.*, 862 F.2d 796, 801 (10th Cir. 1988) ( indemnitor liable for prejudgment interest from the date of the settlement).

[12]Calculated as follows: (902 days divided by 365 days per year) multiplied by $75,000 multiplied by 5.25%.

delay and upon an express direction for the entry of judgment."[13]  The purpose of Rule 54(b) is to avoid the possible injustice of a delay in entering judgment on a distinctly separate claim or as to fewer than all of the parties until the final adjudication of the entire case by making an immediate appeal available.[14]    Rule 54(b) "preserves the historic federal policy against piecemeal appeals," and attempts to strike a balance between the undesirability of more than one appeal in a single action and the need for making review available in multiple-party or multiple-claim situations at a time that best serves the needs of the litigants.[15]

Rule 54(b) entries are not to be made routinely.[16] As stated by the Tenth Circuit, certification under Rule 54(b) is appropriate only when the district court "adheres strictly to the rule's requirement that a court make two express determinations."[17]  First, the court must determine that its judgment is final.[18]  It must be "final" in the sense that it is "an ultimate disposition of an individual claim entered in the course of a multiple claims action."[19]   Second, the court must determine that there no just reason for delay of entry of its judgment exists.[20]

---

[13]Fed. R. Civ. P. 54(b).

[14]*Oklahoma Turnpike Auth. v. Bruner*, 249 F.3d 1236, 1241 (10th Cir. 2001).

[15]*Id.* (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 438 (1956)).

[16]*Id.; see also Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 10 (1980) ("sound judicial administration does not require that Rule 54(b) requests be granted routinely").

[17]*Id.* at 1242.

[18]*Stockman's Water Co., LLC v. Vaca Partners, L.P.*, 425 F.3d 1263, (10th Cir. 2005) (citing *Curtiss-Wright Corp.*, 446 U.S. at 7).

[19]*Curtiss-Wright Corp.,* 446 U.S. at 7 (1980) (quoting *Sears, Roebuck & Co.,* 351 U.S. at 436).

[20]*Id.*

14

The Court finds that following rulings constitute a "final judgment" for purposes of Rule 54(b):  the Court's entry of summary judgment entered herein against the Peak Indemnity Defendants on Hartford's contractual indemnity (Count I) claim, the July 28, 2006 entry of summary judgment in favor of Defendant Reece on Hartford's claim for implied indemnity (Count II), the July 28, 2006 entry of summary judgment in favor of Hartford on the Peak Indemnity Defendants' negligence counterclaim, and the August 14, 2006 entry of summary judgment in favor of Defendant Reece on the cross-claim for implied indemnity asserted by the Peak Indemnity Defendants and Peak Trust Defendants.  The Court finds that final judgment should be entered pursuant to Rule 54(b) on these claims because the rulings ultimately adjudicate and dispose of all the primary claims asserted in the case.  The only claims remaining are Hartford's Counts III and IV for debt and to set aside fraudulent conveyances against the Peak Trust Defendants.  Although these counts remain pending, the Court finds that Hartford cannot proceed on these Counts to recover the amount of the judgment until "final judgment" has been entered on its contractual indemnity claim against the Peak Indemnity Defendants.

After determining finality, the Court must examine whether there is any just reason for delay.[21]  Factors the court should consider are whether the claims under review are separable from the others remaining to be adjudicated and whether the nature of the claims already determined are such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals.[22]   Here, the Court finds there are no just reasons to delay appeal of the judgment on the claims resolved to date.  Hartford's only remaining claims for debt and to set aside

---

[21]Fed. R. Civ. P. 54(b).

[22]*Curtiss-Wright Corp.*, 446 U.S. at 8.

fraudulent conveyances are claims toward collection of the judgment entered against the Peak Indemnity Defendants herein.  Accordingly, the Court determines that there is no just reason for delaying an appeal.  Therefore, the Court finds that a Rule 54(b) certificate is appropriate, and directs that judgment be entered pursuant to Fed. R. Civ. P. 54(b).

**IT IS THEREFORE ORDERED AND ADJUDGED** that Plaintiff Hartford Fire Insurance Company is entitled to Judgment in the total amount of **$ 183,094.83** against defendants P & H Cattle Company, Inc., Emporia Livestock Sales, Inc., Olma V. Peak, and Velma Peak, jointly and severally.  This amount is itemized as follows:

1.   Attorneys' fees and expenses in defending the Wilkey Claim and Action of $36,383.98;

2.   Amount paid by Hartford to Wilkey to settle the Wilkey Claim and Action of $75,000.00;

3.   Attorneys' fees and expenses incurred to enforce the indemnification agreement in the present action of $ 61,980.37; and

4.   Prejudgment interest on the settlement amount of 9,730.48.

**IT IS FURTHER ORDERED** that the Clerk of the Court is directed to enter judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED**.

Dated this 11th day of December, 2006, in Kansas City, Kansas.

s/ David J. Waxse
David J. Waxse
U. S. MAGISTRATE JUDGE

cc:   All counsel

16