DJW/3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

HARTFORD FIRE INSURANCE
COMPANY**,**

                          Plaintiff,                     CIVIL ACTION

v.                                             Case No.  05-2001-DJW

P & H CATTLE COMPANY, INC.,
et al.,

                          Defendants.

## MEMORANDUM AND ORDER

This matter comes before the Court on Plaintiff's Motion to Compel Responses to Discovery (doc. 124) and Motion to Quash Depositions (doc. 135). Plaintiff requests, pursuant to Fed. R. Civ. P. 37, that the Court compel the Peak Trust Defendants to serve complete answers and responses to its First Interrogatories and Request for Production of Documents. In its Motion to Quash Deposition, Plaintiff requests that the Court quash the Notice to Take Deposition Duces Tecum served upon it pursuant to Rule 30(b)(6). As set forth below, the motions are granted in part and denied in part.

## I.    BACKGROUND

Plaintiff Hartford Fire Insurance Company ("Hartford") commenced the instant action against P & H Cattle Company, Inc. ("P & H Cattle"); Emporia Livestock Sales, Inc.; Olma V. Peak; Velma Peak; Tim Reece d/b/a Reece Cattle Company ("Reece"); the Olma V. Peak and Velma M. Peak Irrevocable Trust ("Peak Trust"); and the Peak Trust's co-trustees, Amby Scott Peak, Virginia L. Morris, and Chrysanne M. Haselhorst. Count I of Plaintiff's Complaint asserted a claim for contractual indemnity under a general indemnity agreement against P & H Cattle, Emporia

Livestock Sales, Inc., Olma V. Peak, and Velma Peak (hereinafter the "Peak Indemnity Defendants"). Count II asserted a claim for common law implied indemnity against Reece. In Counts III and IV, Plaintiff seeks to set aside fraudulent conveyances to the Peak Trust under common law and K.S.A. 33-201 *et seq.* against Olma V. Peak, Velma M. Peak, the Peak Trust, and the Peak Trust trustees. In their Answer, the Peak Indemnity Defendants, Peak Trust, and its trustees asserted a counterclaim against Hartford for negligence, and a cross claim for implied indemnity against Defendant Reece.

On July 28, 2006, the Court entered summary judgment in favor of Plaintiff on its contractual indemnity claim (Count I) against the Peak Indemnity Defendants. Final judgment was entered against these defendants on Count I, jointly and severally, on January 4, 2007 in the amount of $183,051.68.[1] The Court further dismissed Plaintiff's claim for common law implied indemnity (Count II) against Defendant Reece. In addition, the Court dismissed the Peak Indemnity and Peak Trust Defendants' negligence counterclaim against Plaintiff, as well as their cross-claim for implied indemnity against Defendant Reece. Counts III and IV, which allege that on February 17, 1998, Olma and Velma Peak fraudulently conveyed a substantial number of their assets into the Peak Trust, are the only remaining claims.

On August 15, 2007, the Court granted Plaintiff's motion for an order requiring Defendants Olma and Velma Peak to appear for a hearing in aid of execution. On October 7, 2007, the Court held a hearing in aid of execution pursuant to Fed. R. Civ. P. 69, at which Plaintiff inquired of Defendants Olma and Velma Peak regarding their assets. Plaintiff had previously served a request for production of documents upon these defendants directing that they produce certain documents

---

[1]*See* Judgment in a Civil Case Pursuant to Fed. R. Civ. P. 54(b) dated Jan. 4, 2007 (doc. 89).

for this purpose at or before the hearing.  Plaintiff sought production of records pertaining to a number of subjects, including: (1) life insurance policy information; (2) information regarding two limited liability companies, P and H Cattle Company, LLC, and Peak Cattle, LLC, in which Olma or Velma Peak allegedly have an interest; and (3) information regarding the assets of the Peak Trust. Defendants Olma and Velma Peak agreed to produce the life insurance policy information and information regarding the two limited liability companies, but objected to producing the records of the Peak Trust as those records were not in their care, control, or custody.  On November 20, 2007, the Court ordered Defendants Olma and Velma Peak, as qualified beneficiaries of the Peak Trust, to make a written request to the Trustees of the Peak Trust for all documents to which they are legally entitled under the terms of the Peak Trust, or under the Uniform Trust Code, K.S.A 58a-101 *et seq.*, that are responsive to Plaintiff's Request for Production of Documents, and to provide the documents received to Plaintiff.[2]

On June 17, 2008, the Court held a telephone status conference on Plaintiff's Motion for Extension of Time to Conduct Discovery and Other Deadlines.[3]  The Court vacated the current schedule and granted the parties sixty days to conduct and complete any necessary discovery and for them to resolve the issue of substitution of Olma Peak under Fed. R. Civ. P. 25.[4]  Plaintiff was to further advise the Court whether it intended to proceed against the Peak Trust and Trustees.

Relevant to the present motion to compel, Plaintiff served its First Interrogatories and First Request for Production of Documents to the Peak Trust and its trustees (hereinafter the "Peak Trust

---

[2]*See* Nov. 20, 2007 Order Requiring Produc. of Docs. in Aid of Execution (doc. 106).

[3]*See* Minute Sheet for June 17, 2008 Status Conference (doc. 115).

[4]Olma V. Peak died on May 17, 2008. *See* Suggestion of Death Regarding Olma V. Peak (doc. 112).

Defendants") on July 17, 2008.[5]  The Peak Trust Defendants served their Discovery Responses to the Interrogatories and Request for Production of Documents on August 18, 2008.[6]  They asserted objections to Interrogatory Nos. 2-5 and all nine of the Requests for Production of Documents.

At the August 25, 2008 telephone status conference, Plaintiff advised the Court that an estate for Defendant Olma Peak was opened August 21, 2008, and that it intended to file a motion to substitute his estate for the deceased.[7]  Plaintiff further advised that it did not intend to pursue involuntary bankruptcy against Defendant Velma Peak.  Plaintiff further advised the Court that it intended to proceed against the Peak Trust Defendants, and would file a motion to compel with regard to the August 18, 2008 discovery responses served by the Peak Trust Defendants.

Plaintiff filed the instant Motion to Compel Discovery on October 8, 2008.  In response, the Peak Trust Defendants filed a Motion to Strike the motion based upon Plaintiff's failure to file the motion within the thirty-day period set forth in D. Kan. Rule 37.1(b).  The Court denied the Motion to Strike the Motion to Compel on November 24, 2008, and gave the parties additional time to file a response and reply brief. [8]

On January 13, 2009, the Peak Trust Defendants served their Notice to Take Depositions Duces Tecum upon Plaintiff.[9]  The Notice seeks for Plaintiff to produce a Rule 30(b)(6) corporate

---

[5]*See* Certificate of Service (doc. 116).

[6]*See* Defs.' Notice of Service of Disc.  Resps. to the Interrogs. and Req. for Produc. of Docs. (doc. 118).

[7]On Sept. 29, 2008, the Court granted Plaintiff's unopposed motion to substitute the Estate of Olma V. Peak for the deceased Defendant Olma V. Peak.  *See* doc. 123.

[8]*See* Mem. & Order (doc. 129).

[9]*See* Notice to Take Dep. Duces Tecum (doc. 134).

representative to testify regarding nineteen areas of inquiry and seeks production of documents for sixteen requests.  Plaintiff Hartford filed its Motion to Quash Depositions on January 26, 2009.

On May 22, 2009, counsel for Defendants filed a Motion to Withdraw as Counsel.  The Court granted the motion on June 25, 2009, but recognizing that corporate and trust defendants cannot appear pro se, ordered Defendants P & H Cattle, Emporia Livestock Sales, Inc., and the Peak Trust to obtain counsel to represent them by July 31, 2009.[10]  This deadline was later extended to August 21, 2009.[11]    To date, no counsel has entered an appearance on behalf of any of the Defendants remaining in the case.

## II.    MOTION TO COMPEL DISCOVERY

### A.    Specific Interrogatories and Requests for Production in Dispute

In its Motion to Compel Discovery, Plaintiff requests that the Court compel the Peak Trust Defendants to serve complete answers and responses to its First Interrogatories Nos. 2-5 and Requests for Production of Documents Nos. 1-9.  Plaintiff's Interrogatory No. 2 asks the Peak Trust Defendants to identify "all bookkeepers and accountants who have kept or supervised the keeping of books of account or records from January 1, 1998 until present."  Interrogatory No. 3 similarly seeks identification of "all firms or individuals who were in possession of" these books of account or records.   Interrogatory Nos. 4 and 5 ask the Peak Trust Defendants to identify certain transfers of real estate and personal property from any of the Peak Indemnity Defendants to the Peak Trust. Specifically, Interrogatory No. 4 requests identification of all transfers of real estate to the Peak Trust from the Peak Indemnity Defendants or from the Peak Trust to another person or entity

---

[10]*See* Order Authorizing Withdrawal of Counsel (doc. 141).

[11]*See* Aug. 3, 2009 Order (doc. 143).

occurring for the time period January 1, 1998 to the present.  For each transfer identified, it requests the following information:

> the description/location of the property, the identity of each and every owner of the property prior to the transfer, the date of transfer, the percent of interest acquired or owned by the Trust, the identity of the record title holder after the transfer, the purchase price paid by the Trust for each transfer, and the sale price received by the Trust for each transfer.

Interrogatory No. 5 asks the Peak Trust Defendants to provide information regarding any transfers of personal property to the Peak Trust from the Peak Indemnity Defendants, including the "description/location of the property, the name of the title holder before the transfer, the date of transfer, the market value of the property at the time of the transfer[], the purchase price paid by the Trust and the percent owned by the Trust."

> The Peak Trust Defendants served the following answer to Interrogatory Nos. 2-5:

> Defendants object to this discovery request.  The Trust is an irrevocable spendthrift trust which has not been set aside by any Court Order.  The information and documents sought is privileged and confidential.  The Plaintiff is attempting to conduct a prejudgment aid and execution style hearing in regard to the assets of the spendthrift trust without first setting aside the Trust.

> "A universally recognized corollary is that courts can neither prevent or force the exercise of discretion by the trustee nor specify a particular exercise or otherwise interfere with or impinge on such . . . discretion when it is expressly vested, without condition or limitation, under the terms of the trust instrument.  Again, Texas is in accord: Texas courts 'are limited in their powers over the trustee of a discretionary trust,' prohibited by law from interfering with the discretion of the trustee absent a clear showing of fraud or other egregious conduct.  No such fraudulent or egregious conduct by the Trustees is charged in the instant case, so court interference with the unconditional discretion vested in the Trustees is prohibited by applicable trust law." *Bass v. Denney* (In re Bass), 171 F.3d 1016.

> Plaintiff also requests that the Court compel the Peak Trust Defendants to produce documents responsive to its First Requests for Production of Documents Nos. 1-9.  These Requests seek production of the following documents:

Request No. 1        Copies of state and federal income tax returns for the Trust for the tax years 1998 to the present.

Request No. 2        Copies of all deeds and supporting or other documents pertaining to . . . any transfers of real property made to, from, or by the Trust from January 1, 1998 to the present.

Request No. 3        Copies of all documents showing payments made from the Trust to or on behalf of either Olma V. Peak or Velma M. Peak from January 1, 2005 to the present.

Request No. 4        All documents pertaining to . . . any real property owned by the Trust since January 1, 1998.

Request No. 5        Copies of all title documents or other documents pertaining to . . . any transfers of personal property made to, from, or by the Trust from January 1, 1998 to the present.

Request No. 6        Copies of all appraisals for real realty or personal property owned by the Trust that date after January 1, 1998.

Request No. 7        A copy of the stock certificates and other documents in which the Trust has held an interest since January 1, 1998 of any incorporated or unincorporated business[es] that were transferred to the Trust by Olma V. Peak, Velma M. Peak, P & H Cattle Company, Inc. or Emporia Livestock Sales, Inc.

Request No. 8        All documents showing any interest held by the Trust in any other real or personal property that had been owned at any time in the past or is presently owned by Olma V. Peak, Velma M. Peak, P & H Cattle Company, Inc. or Emporia Livestock Sales, Inc. of any kind not otherwise listed in these request[s] for production.

Request No. 9        All documents evidencing any lease or operating agreement between the Trust, Olma V. Peak, or Velma M. Peak and any third party of the livestock auction or sales facility in Emporia, Kansas formerly operated by P & H Cattle Company, Inc. or Emporia Livestock Sales, Inc.

The Peak Trust Defendants asserted the same objections to Plaintiff's nine requests for production as they asserted to the interrogatories, i.e., that the Peak Trust is an irrevocable

7

spendthrift trust which has not been set aside by any court order, the information and documents sought is privileged and confidential, and Plaintiff is attempting to conduct a prejudgment aid and execution style hearing in regard to the assets of the spendthrift trust without first setting aside the Peak Trust.

**B.      Objections to Discovery Sought**

In their response to Plaintiff's Motion to Compel Discovery, the Peak Trust Defendants reassert their objections that the trust contains a spendthrift provision which renders the trust immune to attachment or garnishment by a judgment creditor and Plaintiff is attempting to conduct a prejudgment aid and execution style hearing in regard to the assets of the spendthrift trust without first setting aside the Peak Trust.  They do not, however, reassert any objection that the information sought is privileged and confidential.  In addition, there is no indication that the Peak Trust Defendants have provided Plaintiff with a privilege log for any documents they are withholding based upon a claim of privilege.  Absent any showing of production of a privilege log, the Court will therefore consider these objections to be abandoned by the Peak Trust Defendants.  The Court will therefore limit its discussion to the objections reasserted by the Peak Trust Defendants in their response to the motion to compel.

The Peak Trust Defendants argue in their response to the motion to compel that Plaintiff is seeking to compel the Peak Trust and trustees to violate their fiduciary duties and disclose business and transactions of the Peak Trust prior to ever obtaining a judgment to set aside transfers to the Trust.  They point out that Olma and Velma Peak, in their aid and execution proceedings, produced all of the documentation and information relating to their transfers to the Peak Trust.  The information sought by Plaintiff in the present motion to compel concerns the trustees' actions and

the accounts of the Peak Trust after the transfers.  The Peak Trust Defendants' position is that until the Court determines that the already disclosed transfers to the Trust were in fact fraudulent there can be no further discovery of the actions of the Trust and trustees.  They cite the Fifth Circuit case, *Bass v. Denny,*[12] for the universally recognized corollary that "courts can neither prevent or force the exercise of discretion by the trustee nor specify a particular exercise or otherwise interfere with or impinge such discretion when it is expressly vested without condition or limitation, under the terms of the trust instrument."[13]  The Peak Trust Defendants also point out that the Kansas Uniform Fraudulent Transfers Act is inapplicable to this case because it did not become effective until January 1, 1999, which is after the February 17, 1998 creation date of the Peak Trust and after the transfers to the Peak Trust by Olma and Velma Peak.

Plaintiff argues that the Peak Trust Defendants' reliance on a Fifth Circuit case, *Bass v. Denny*, does not support their position, even if it were applicable in Kansas.  According to Plaintiff, even under Texas law, where *Bass* arose, discovery regarding fraudulent transfers is permissible even when the trust is irrevocable.

In *Bass*, the Fifth Circuit held that the bankruptcy court erred by entering a mandatory injunction commanding trustees of a spendthrift trust to furnish judgment creditors with advance notice of intended discretionary distributions to the debtor.  Even if the Court were bound by *Bass*, which it is not, the Court finds the case does not stand for the proposition that a spendthrift trust and its trustees are exempt from a court order compelling them to provide discovery.  A spendthrift trust is a trust created to provide a fund for the maintenance of a beneficiary and at the same time secure

---

[12]171 F.3d 1016, 1028-29 (5th Cir. 1984).

[13]*Id.*

9

the fund against the beneficiary's improvidence or incapacity, and contains provisions against alienation of the trust fund by the voluntary act of the beneficiary or by his creditors.[14]  Kansas law recognizes that incorporation of spendthrift restrictions into a trust can result in the trust assets and income being protected from the claims of a beneficiary's creditors.[15]   In this case, the Peak Trust Defendants claim that the Peak Trust is a spendthrift trust and therefore Plaintiff, as a creditor of Olma and Velma Peak, cannot compel or force the trustees to provide information regarding the Peak Trust.

The Court finds that regardless of whether the Peak Trust is in fact a spendthrift trust as asserted does not control the issue of whether Plaintiff can compel the Peak Trust Defendants to respond to its discovery requests.  The Peak Trust Defendants have not cited any authority, and the Court has otherwise found none, supporting their argument that trusts with spendthrift provisions are exempt from discovery, especially where the trust and trustees are named parties in the lawsuit where the discovery is sought.

In this case, the Peak Trust Defendants are named as defendants in Counts III and IV of the complaint.   In those Counts, Plaintiff asserts claims for "debt and to set aside fraudulent conveyances" under common law and the Kansas Uniform Fraudulent Transfers Act[16] against the Peak Trust Defendants.  Plaintiff alleges in its Complaint that Defendants Olma and Velma Peak on or about February 17, 1998, and thereafter from time to time, transferred a substantial amount of their real and personal property to the Peak Trust.  Thereafter, from time to time the Peak Trust

---

[14]*In Re Estate of Sowers*, 1 Kan. App. 2d 675, 680, 574 P.2d 224, 228 (1977).

[15]*In re Semmel*, No. 01-14433, 2003 WL 23838130, at *3 (Bankr. D. Kan. Feb. 27, 2003).

[16]K.S.A. 33-201 *et seq*.

transferred real estate assets to related parties.  These transfers were allegedly made with the intent

to hinder, delay, or defraud a creditor and were made without receiving a reasonable equivalent

value in exchange.    As to the trustees, Plaintiff alleges that the trustees are relatives of Olma and

Velma Peak and are therefore insiders under K.S.A. 33-201(g)(1)(A) and affiliates under K.S.A. 33-

201(a)(4) and 201(g)(4).

Because the Peak Trust Defendants are parties to this action, Plaintiff is entitled to discovery

from them regarding its claims asserted against them.  Federal Rule of Civil Procedure 26(b)(1)

permits Plaintiff to "obtain discovery regarding any nonprivileged matter that is relevant to any

party's claim or defense."  Relevant information need not be admissible at the trial if the discovery

appears reasonably calculated to lead to the discovery of admissible evidence."[17]   Relevancy is

broadly construed, and a request for discovery should be considered relevant if there is "any

possibility" that the information sought may be relevant to the claim or defense of any party.[18]

Consequently, a request for discovery should be allowed "unless it is clear that the information

sought can have no possible bearing" on the claim or defense of a party.[19]

In this motion, the Court finds that Plaintiff has sufficiently shown that the discovery sought

is relevant to Counts III and IV of their Complaint to set aside the trust.  Specifically, the Court finds

the interrogatories and requests for production, which seek information on transfers of real estate

and personal property from any of the Peak Indemnity Defendants to the Peak Trust, to be relevant

---

[17]Fed. R. Civ. P. 26(b)(1).

[18]*Cardenas v. Dorel Juvenile Group, Inc.,* 232 F.R.D. 377, 382 (D. Kan. 2005) (citing *Owens v. Sprint/United Mgmt. Co.,* 221 F.R.D. 649, 652 (D. Kan. 2004);  *Sheldon v. Vermonty,* 204 F.R.D. 679, 689-90 (D. Kan. 2001)).

[19]*Cardenas,* 232 F.R.D. at 382 (citations omitted).

to Plaintiff's claim that these transfers were fraudulent and made with the intent to hinder, delay, or defraud creditors.   The fact that the discovery requests seek information on transfers to the Peak Trust occurring from January 1, 1998 to the present, after the date of the creation of the Peak Trust, does not make the interrogatories irrelevant.  Plaintiff does not limit its claims to fraudulent transfers made at the time of the creation of the Peak Trust.  Thus, information on transfers made by Olma and Velma Peak after the February 17, 1998 creation date would be relevant to Plaintiff's claims and thus discoverable.  In addition, the fact that the Peak Trust was created before the January 1, 1999 effective date of the Kansas Uniform Fraudulent Transfers Act does not make the discovery sought moot because Plaintiff is also asserting a claim to set aside fraudulent conveyances under common law.

The Court therefore finds that under Fed. R. Civ. P. 26(b) Plaintiff is entitled to discovery from the Peak Trust Defendants in support of its claims and allegations contained in Counts III and IV.  Defendants the Peak Trust and its trustees cannot evade their duty as named defendants in this action to avoid discovery by asserting that the trust contains a spendthrift provision.  That the Peak Trust may be an irrevocable spendthrift trust is not a valid objection to discovery where Plaintiff has asserted claims directly against the Peak Trust and its trustees.

Plaintiff would also be entitled to post-judgment discovery from the Peak Trust Defendants in aid of execution of its judgment against the Peak Indemnity Defendants.  Under Federal Rule of Civil Procedure 69(a)(2), a judgment creditor is permitted to obtain discovery from any person in aid of execution of a judgment.  It provides that the judgment debtor "may obtain discovery from *any person* — including the judgment debtor — as provided in these [Federal] rules or by the

procedure of the state where the court is located."[20] "The discovery provisions of the Federal Rules of Civil Procedure were designed to afford the parties the right to obtain information pertinent to the pending controversy, and to effectuate that purpose they are to be liberally construed.  That basic philosophy applies with equal force whether the information is sought in a pre-trial or in a post-judgment discovery proceeding."[21]   The law allows judgment creditors to conduct full post-judgment discovery to aid in executing a judgment.[22]   The broad scope of post-judgment discovery permits a judgment creditor to discover assets of the judgment debtor upon which execution may be made.[23]   Discovery is also allowed to find out about assets that have been fraudulently transferred or are otherwise beyond the reach of execution,[24] as well as information "which could reasonably lead to the discovery of concealed or fraudulently transferred assets."[25]

While the scope of post-judgment discovery is broad and can be sought from any party, third parties generally may be examined only about the judgment debtor's assets and cannot be required to disclose their own assets.[26]  However, "discovery has been allowed against a non-judgment debtor

---

[20]Fed. R. Civ. P. 69(a)(2) (emphasis added).

[21]*United States v. McWhirter*, 376 F.2d 102, 106 (5th Cir. 1967).

[22]*Credit Lyonnais, S.A. v. SGC Int'l, Inc.*, 160 F.3d 428, 430 (8th Cir. 1998).

[23]*Federal Deposit Ins. Corp. v. LeGrand*, 43 F.3d 163, 172 (5th Cir. 1995).

[24]*Caisson Corp. v. County West Bldg. Corp.*, 62 F.R.D. 331, 334 (E.D. Pa. 1974); 12 Charles Alan Wright et al., *Federal Practice and Procedure* § 3014 (2d ed. 1997).

[25]*OHM Res. Recovery Corp. v. Indus. Fuels & Res., Inc.*, No S90-511, 1991 WL 146234, at *2 (N.D. Ind. July 24, 1991).

[26]*Trustees of Amalgamated Ins. Fund v. Jordan Mfg. Corp.*, No. 07-21301-MC, 2008 WL 343132, at *1 (S.D. Fla. Feb. 5, 2008); 12 Charles Alan Wright et al., *Federal Practice and Procedure* § 3014 (2d ed. 1997).

upon a somewhat heightened showing of necessity and relevance-i.e., at least some demonstration of concealed or fraudulent transfers or alter ego relationship with the judgment debtor."[27]   In addition, objections to post-judgment discovery based upon the argument that some of the judgment debtor's assets are exempt from execution have not met with approval.[28]

Here, Plaintiff has raised an issue about the propriety of the transfer of assets between Olma and Velma Peak and the Peak Trust sufficient to permit discovery regarding any asset transfers from the judgment debtors, the Peak Indemnity Defendants, to the Peak Trust.  The Court will therefore order the Peak Trust Defendants to serve Plaintiff with their answers to Interrogatory Nos. 2-5, and produce documents responsive to Request for Production Nos. 2-9.  The Court, however, will not compel the Peak Trust Defendants to produce state and federal tax returns of the Peak Trust responsive to Request No. 1.  Plaintiff has failed to make the additional showing required to compel their production.  Although no absolute privilege precludes discovery of tax returns, courts generally require an additional showing before compelling their production.[29]  The District of Kansas applies a two-pronged test to assure a balance between the liberal scope of discovery and the policy favoring the confidentiality of tax returns.[30]  "First, the court must find that the returns are relevant to the

---

[27]*Uniden Corp. of Am. v. Duce Trading Co., Ltd.*, No. 89-CV-0878E, 1993 WL 286102, at *1 (W.D.N.Y. July 19, 1993).  *See also Credit Lyonnais,* 160 F.3d at 430 (reversing district court's denial of motion to compel the post-judgment deposition of "closely linked" corporate officer of debtor corporation).

[28]*See White v. Gen. Motors Corp.*, Civ. A. No. 88-2053-S, 1990 WL 47437, at *1 (D. Kan. Mar. 13, 1990) (discovery objection that some assets may ultimately prove to be exempt from execution found to be without merit).

[29]*See Cont'l Coal, Inc. v. Cunningham*, No. 06-2122-KHV, 2007 WL 4241848, at *3 (D. Kan. Nov. 28, 2007) (applying two-prong test to assure a balance between liberal scope of discovery and policy favoring confidentiality of tax returns).

[30]*Id.*

14

subject matter of the action. Second, the court must find that there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable."[31]   Plaintiff has made no showing as to the relevancy of the Peak Trust's tax returns or a compelling need for them.  The Court therefore declines to order production of the state and federal tax returns of the Peak Trust, as sought by Plaintiff's Request No. 1.

Plaintiff's Motion to Compel Discovery is therefore granted in part and denied in part. **Within thirty (30) days from the date of this Memorandum and Order**, the Peak Trust Defendants shall serve Plaintiff with their answers to Plaintiff's Interrogatory Nos. 2-5, and produce documents responsive to Requests for Production Nos. 2-9.

### C.   Request for Reasonable Expenses

Plaintiff also seeks its reasonable expenses incurred in making the motion pursuant to Fed. R. Civ. P. 37(a)(5)(A) and 26(g)(3), arguing that Defendants' refusals to allow this discovery and continued concealment of the assets transferred into the Peak Trust by the judgement debtors, Olma and Velma Peak, are not substantially justified.

Pursuant to Federal Rule of Civil Procedure 37(a)(4)(C), when a court grants in part and denies in part a motion to compel, the court may "apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner."[32]   Here, the Court finds it appropriate and just for the parties to bear their own expenses and fees incurred in connection with the filing of the motion to compel.

---

[31]*Audiotext Commc'ns Network, Inc. v. U.S. Telecom, Inc.*, No. 94-2395-GTV, 1995 WL 625962, at *11 (D. Kan. Oct. 5, 1995).

[32]Fed. R. Civ. P. 37(a)(4)(C).

### III.     MOTION TO QUASH DEPOSITIONS

Plaintiff has also filed a Motion to Quash Depositions pursuant to Fed. R. Civ. P. 16(b) and 45(c)(3)(A)(iii).  It requests that the Court quash the Peak Trust Defendants' Notice to Take Depositions Duces Tecum served on January 13, 2009, arguing that the notice was served after the discovery deadline and is therefore untimely.  It also argues that the motion should be denied because the Peak Trust Defendants have refused to cooperate in responding to discovery submitted to them, and that the deposition notice seeks irrelevant and unduly burdensome information, as well as information protected by the attorney-client privilege and the work product doctrine.

#### A.     Timeliness of the Deposition Notice

Plaintiff first urges the Court to grant its motion to quash by finding the Peak Trust Defendants' Notice to Take Depositions Duces Tecum to be untimely as it was served after the discovery deadline.  It argues that the Peak Trust Defendants provided no notice of their intent to take a deposition of its representative until nearly five months after discovery closed, and that because the Peak Trust Defendants have consistently failed and refused to comply with discovery rules, they should not be allowed to use discovery beyond what is permitted by the Scheduling Order.

The Peak Trust Defendants respond by stating that the Court held a telephone conference with the parties on August 25, 2008, and during that conference the Court indicated that it would not set any case management deadlines until it ruled upon Plaintiff's motion to compel.  Defendants therefore contend that discovery is not closed.  The Peak Trust Defendants also contend that they should not be punished by not being allowed to conduct discovery simply because they objected to Plaintiff's discovery.   In its reply, Plaintiff argues that the Peak Trust Defendants have

misinterpreted the Court's actions at the telephone conference and their discovery requests are untimely. The Court stated that it would defer setting case deadlines until after the motion to compel was resolved, but the time for discovery had already expired and the Court did not order that the time for conducting discovery would be reopened.

On June 17, 2008, the Court vacated the current case schedule and granted the parties sixty days to conduct and complete any necessary discovery.[33] Thereafter, on August 25, 2008, the Court expressly deferred setting any case deadlines for Counts III and IV until after it ruled on Plaintiff's motion to compel. The Court's deferral of setting *any* case deadlines therefore stayed the deadline for completion of discovery pending its ruling on Plaintiff's motion to compel. The Peak Trust Defendants' Notice to Take Depositions Duces Tecum served upon Plaintiff on January 13, 2009 was therefore timely.

### B.    Specific Topics and Documents Sought by the Peak Trust Defendants' Deposition Notice

The Notice To Take Deposition Duces Tecum served by the Peak Trust Defendants requires Plaintiff to produce a Rule 30(b)(6) corporate representative to testify regarding nineteen areas of inquiry (Topic Nos. 1-19) and seeks production of documents for sixteen requests (Request Nos. 20-34). Plaintiff argues in its Motion to Quash that the topics and document requests contained in the Notice are overly broad and unduly burdensome in that they include extensive information unrelated to this action and not likely to lead to the discovery of admissible evidence. It further objects that the topics and document requests seek information protected by the attorney-client privilege and the work product doctrine. For ease of discussion, the Court will group the Rule 30(b)(6) areas of

---

[33] *See* June 15, 2008 Minute Order (doc. 115).

inquiry with their corresponding document requests.

### 1.    Information on General Indemnity Agreements

In Deposition Notice Topic Nos. 1-3, the Peak Trust Defendants seek a representative of Plaintiff to testify as to Plaintiff's drafting, preparation, and utilization of General Indemnity Agreements ("GIAs"), its policy and procedures regarding GIAs, and whether it has any requirements to obtain financial information from individual or entities signing GIAs. Corresponding Request No. 20 seeks "[a]ll documents regarding Plaintiff drafting, preparing and use of General Indemnity Agreements from 1990 through the date of the filing of this lawsuit." Request No. 21 seeks "[t]he policy the procedures of Plaintiff regarding General Indemnity Agreements from 1990 through the date of the filing of this lawsuit." Request No. 22 seeks "[a]ll documents setting forth any requirements of the Plaintiff to provide financial information by individuals or entities that signed General Indemnity Agreements from 1990 through the date of the filing of this lawsuit."

Plaintiff objects to Topic Nos. 1-3, and Request Nos. 20-22 because they seek information or documents regarding indemnity agreements and other matters that are no longer relevant to this action.  While these areas of inquiry and document requests may be relevant to Plaintiff's contractual indemnity claims, which the Court has already ruled upon, they do not appear relevant to Plaintiff's claims to set aside the Peak Trust contained in Counts III and IV of the complaint.  The Court agrees with Plaintiff that the topics and document requests for information on the GIAs are no longer are relevant as the Court has already entered summary judgment on Plaintiff's claim for contractual indemnity.  The Peak Trust Defendants have not otherwise shown how this information would be relevant to the remaining claims to set aside fraudulent transfers to the Peak Trust.  The

Court will therefore grant Plaintiff's Motion to Quash as to Topic Nos. 1-3, and Request Nos. 20-22.

### 2.    Financial information received or requested from Defendants

Deposition Topic Nos. 4-12 seek testimony "regarding any financial information received or requested from" the Peak Indemnity Defendants, as well as Plaintiff's review of such financial information which references or discusses their financial condition.  Corresponding with these topics are Request for Production Nos. 23-31.   Specifically, Request Nos. 23-24, 26-27, and 29-30 respectively seek all documents regarding any financial information received or requested from the Peak Indemnity Defendants for the period 1990 through the date of the filing of this lawsuit. Request Nos. 25, 28, and 31 seek documents regarding the review of any financial information by the Plaintiff which referenced or discussed the respective financial condition of the Peak Indemnity Defendants prior to the filing of this lawsuit.

Plaintiff objects to these Topics and Requests on the grounds they seek irrelevant information and are not limited in time or scope.  It further objects that they seek information protected by the attorney-client privilege and the work product doctrine.

Federal Rule of Civil Procedure 30(b)(6) allows a party to notice the deposition of an organization and to specify the areas of inquiry.  It requires that the party seeking to depose an organization "must describe with reasonable particularity the matters for examination."[34]  For Rule 30(b)(6) to effectively function, the requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to

---

[34]Fed. R. Civ. P. 30(b)(6).

the issues in dispute.[35]  Otherwise, an overly broad Rule 30(b)(6) notice may subject the noticed party to an impossible task.[36]  If the noticed organization cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible.[37]

Fed. R. Civ. P. 34(b)(1)(A) likewise requires that a request for production "must describe with reasonable particularity each item or category of items to be inspected."   Though what qualifies as "reasonabl[y] particular" depends at least in part on the circumstances of each case, a discovery request should be sufficiently definite and limited in scope that it can be said "to apprise a person of ordinary intelligence what documents are required and [to enable] the court . . . to ascertain whether the requested documents have been produced."[38]

Applying these standards, the Court finds that the Peak Trust Defendants' deposition topics and document requests which seek testimony and documents on "any financial information received or requested from" the Peak Indemnity Defendants, as well as Plaintiff's review of such financial information which references or discusses their financial condition, are overly broad in that they fail to describe the testimony and documents sought with reasonable particularity.  The topics seeking testimony regarding "any financial information received or requested" from the Peak Indemnity Defendants with no temporal limitation does not satisfy the reasonable particularity requirement of Rule 30(b)(6) sufficient to put Plaintiff on notice for what it should prepare its representative to

---

[35]*Sprint Commc'ns Co., L.P. v. Theglobe.com, Inc.*, 236 F.R.D. 524, 528 (D. Kan. 2006); *E.E.O.C. v. Thorman & Wright Corp.*, 243 F.R.D. 421, 426 (D. Kan. 2007).

[36]*Steil v. Humana Kan. City, Inc.,* 197 F.R.D. 442, 444 (D. Kan. 2000);  *Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000).

[37]*Reed*, 193 F.R.D. at 692.

[38]*Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649-50 (10th Cir. 2008) (quoting 8A Wright & Miller, *Federal Practice and Procedure* § 2211).

testify.  In addition, the Court finds the corresponding document requests for "all documents regarding any financial information received or requested from" the Peak Indemnity Defendants from 1990 through the date of this lawsuit likewise overly broad.  Plaintiff's objections to these Topics and Requests are therefore sustained.  Plaintiff's Motion to Quash is granted as to Topic Nos. 4-12 and Request Nos. 23-31.

### 3.    Documents concerning any defendants

Topic No. 13 seeks testimony from Plaintiff on "any documents maintained by the Plaintiff concerning any of the Defendants."  Corresponding to this topic is Request No. 32, which seeks "[a]ll documents maintained by the Plaintiff concerning any of the Defendants by the Plaintiff from 1990 through the date of the filing of this lawsuit."

Plaintiff objects to Topic No. 13 on the grounds it is not limited in time or scope, and seeks information that is protected by attorney-client privilege and work product doctrine.   The Court agrees that the broadly worded topic of "any documents maintained by the Plaintiff concerning any of the Defendants" is not described with reasonable particularity as required by Rule 30(b)(6). Furthermore, it fails to limit the scope of the topic to the defendants and claims remaining in the case and thus seeks irrelevant information. The Court also finds the corresponding request for production of "all documents maintained by the Plaintiff concerning any of the Defendants by the Plaintiff from 1990 through the date of the filing of this lawsuit" fails to describe with reasonable particularity the documents sought.  It too seeks documents are that no longer relevant to the remaining claims in the case.  Plaintiff's objections to Topic No. 13 and Request No. 32 are sustained.  Plaintiff's Motion to Quash is granted as to Topic No. 13 and Request No. 32.

### 4.    Information regarding intent of transfers

In Topic Nos. 14 and 16, the Peak Trust Defendants request a representative to testify to information and documents regarding Plaintiff's claims and allegations that the transfer of real estate to the Peak Trust was with the intent to hinder, delay, or defraud a creditor, specifically Plaintiff. Topic No. 15 similarly seeks testimony regarding information and documents regarding the alleged participation of the Peak Trust, acting through its trustees, in the fraudulent scheme or such knowledge of facts and circumstances as would import knowledge of the fraud.

The Court finds that these Topics seek, with reasonably particularity, information about Plaintiff's claims and allegations that assets of Olma and Velma Peak were fraudulently transferred to the Peak Trust for the purpose of hindering, delaying, and defrauding it as creditor.  Plaintiff relevancy objections to Topic Nos. 14-16 are therefore overruled.

Plaintiff also objects to the Topics on the grounds they seek information that is protected by attorney-client privilege and work product doctrine. Courts addressing this issue have generally declined to uphold attorney-client and work product objections to topics set out in Rule 30(b)(6) notices unless the requested topics, on their face, call for testimony invading the attorney-client privilege or attorney work product doctrine.[39]    Accordingly, the Court finds that the blanket assertions of attorney-client privilege and work product against the deposition topics are premature. The Court does not find that the topics on their face call for testimony invading the attorney-client

---

[39]*See United States v. Hodgson*, 492 F.2d 1175, 1177 (10th Cir. 1974) (holding that assertions of privilege must normally be raised "as to each record sought and each question asked so that . . . the court can rule with specificity"); *Sprint*, 236 F.R.D. at 529 (holding that blanket assertions of privilege before any questions have been asked at a Rule 30(b)(6) deposition are premature); *Carolina Indus. Prods., Inc. v. Learjet Inc.*, No. CIV. A. 00-2366-JWL, 2001 WL 1155297, at *3 (D. Kan. Aug. 10, 2001) (finding topic on its face did not call for testimony invading privilege, but recognizing that objections could be asserted to specific deposition questions eliciting privileged or protected information).

privilege or work product doctrine.  The Court recognizes that specific questions could elicit privileged or protected information.  If that happens, then Plaintiff may assert its privilege at that time.

Plaintiff's Motion to Quash is denied as to Topic Nos. 14-16.  The parties shall meet and confer regarding a mutually convenient time **within the next sixty (60) days** for Plaintiff to produce a designated representative to testify about the matters set forth in Topic Nos. 14-16.

### 5.        Plaintiff's specific allegations as to the transfers

Topic No. 17 inquires as to several of Plaintiff's allegations, including (a) whether the alleged transfer was to an insider, (b) whether the debtor retained possession or control over the property transferred, (c) whether the transfer was disclosed or concealed, (d) whether before the transfer was made or the obligation was incurred the debtor had been sued or threatened with suit; (e) whether the transfer was of substantially all of debtor's assets; (f) whether the debtor absconded; (g) whether the debtor removed or concealed assets; (h) whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (i) whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (j) whether the transfer occurred shortly before or shortly after a substantial debt was incurred; and (k) whether the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor. Corresponding Request No. 33 seeks all documents regarding these allegations.

The Court finds that Topic No. 17 and Request No. 33 seek, with reasonably particularity, relevant information to further flesh out Plaintiff's allegations with regard to the transfers of assets to the Peak Trust.  Plaintiff overly broad and relevancy objections are therefore overruled.

23

Plaintiff also objects that Request No. 33 seeks documents protected by the attorney-client privilege and work product doctrine.  To the extent that this Request calls for the production of documents containing information protected from disclosure by the attorney-client privilege or that constitute work product, Plaintiff shall comply with Fed. R. Civ. P. 26(b)(5)(A).  That Rule sets forth the proper procedure for a party withholding privileged or work product information to advance a claim that such material is privileged or protected by the work product doctrine.  For any documents responsive to Request No. 33 that Plaintiff intends to withhold from production on the grounds they are protected by the attorney-client privilege or constitute work product, it must serve the Peak Trust Defendants with a privilege log.

Plaintiff's Motion to Quash is therefore denied as to Topic No. 17 and Request No. 33.  The parties shall meet and confer regarding a mutually convenient time **within the next sixty (60) days** for Plaintiff to produce a designated representative to testify about the matters set forth in Topic No. 17 and to produce documents responsive to Request No. 33.

### 6. Plaintiff's allegations that transfers were made without receiving reasonably equivalent value in exchange

Finally, in Topic Nos. 18 and 19, the Peak Trust Defendants identify the area of inquiry as "information or documents that the alleged transfer of real estate by the Peaks were made without receiving a reasonably equivalent value in exchange for the transfer." Topic No. 18 seeks testimony inquiring whether (a) the Peaks were engaged in a business or transaction for which the remaining asserts were unreasonably small, or (b) they intended to incur or believed they would incur debts beyond their ability to pay.  Topic No. 19 seek testimony on whether (a) the Peaks were insolvent at the time or became insolvent as a result of the transfer, or (b) if they made a transfer to an insider for an antecedent debt, the Peaks were insolvent at that time and the insider had reasonable cause

to believe they were insolvent.  Corresponding Request Nos. 33a[40] seeks:

> All documents that the alleged transfers of real estate by the Peaks were made without receiving a reasonably equivalent value in exchange for the transfer and: (a) The Peaks were engaged or were about to engage in a business or transaction for which the remaining assets of the Peaks were unreasonably small in relation to the business or transaction; or (b) The Peaks intended to incur, debts beyond their ability to pay as they became due.

Request No. 34 likewise seeks the same information except based upon the claim the Peaks were insolvent at the time or become insolvent as a result of the transfer or obligation, or made the transfer to an insider for an antecedent debt.

The Plaintiff objects to Topic Nos. 18-19, and Request Nos. 33a-34 on the grounds they seek irrelevant information, they are not limited in time or scope, and they seek information protected by attorney-client privilege and the work product doctrine.

The Court finds that Topic Nos. 18-19 and Request Nos. 33a-34 seek, with reasonably particularity, relevant information to further flesh out Plaintiff's allegations with regard to the allegedly fraudulent transfers of assets to the Peak Trust.  They specifically seek information or documents about Plaintiff's allegations that the  transfers of real estate to the Peak Trust were made without receiving a reasonably equivalent value in exchange for the transfer, the Peaks were engaged or were about to engage in a business or transaction for which the remaining asserts were unreasonably small, and the Peaks were insolvent at the time or became insolvent as a result of the transfer.  These topics and requests therefore seek information relevant to Plaintiff's allegations in support of its claims to set aide the transfers to the Peak Trust.  They also do not appear overly broad as they specifically limit the scope to specific allegations with regard to factual circumstances

_____

[40]The Court notes that two document requests are numbered 33.  The Court will refer to the second request number 33 as "33a."

surrounding the asset transfers.  Plaintiff's overly broad and relevancy objections are therefore overruled.

Plaintiff also objects that Request Nos. 33a and 34 seek documents protected by the attorney-client privilege and work product doctrine.  As discussed above, to the extent that these Requests call for the production of documents containing information protected from disclosure by the attorney-client privilege or that constitutes work product, Plaintiff shall comply with Fed. R. Civ. P. 26(b)(5)(A) and produce a privilege log describing each document withheld from production.

Plaintiff's Motion to Quash is therefore denied as to Topic Nos. 18-19 and Request No. 33a-34.  The parties shall meet and confer regarding a mutually convenient time **within the next sixty (60) days** for Plaintiff to produce a designated representative to testify about the matters set forth in Topic Nos. 18-19 and to produce documents responsive to Request No. 33a-34.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel Responses to Discovery (doc. 124) is granted in part and denied in part.  The Peak Trust Defendants shall have **thirty (30) days** from the date of this Memorandum and Order to serve their answers and produce documents responsive to Plaintiff's First Interrogatories Nos. 2-5 and Request for Production of Documents Nos. 2-9.  Each party shall bear its own fees and expenses incurred in relation to the motion to compel.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Quash Deposition (doc. 135) is granted in part and denied in part.  The parties shall meet and confer regarding a mutually convenient time **within the next sixty (60) days** for Plaintiff to produce a designated representative to testify about the matters set forth in Topic Nos. 14-19 and to produce documents responsive to Request Nos. 33, 33a, and 34.

**IT IS FURTHER ORDERED** that a telephone status conference is set for **October 26, 2009 at 2:00 p.m.** The Court will initiate the conference call.

**IT IS SO ORDERED.**

Dated in Kansas City, Kansas, this 10th day of September, 2009.


s/ David J. Waxse
David J. Waxse
United States Magistrate Judge